UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LUIS PONCE and LUISA PONCE,**<br><br>     Plaintiffs,<br><br>     v.<br><br>**WILMINGTON SAVINGS FUND SOCIETY, FSB doing business as CHRISTIANA TRUST AS TRUSTEE FOR PNPMS TRUST 1 and STATEBRIDGE COMPANY, LLC,**<br><br>     Defendants. | Civ. No. 22-4834 (KM) (JBC)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the Court on the motion (DE 10)[1] of Wilmington Savings Fund Society, FSB doing business as Christiana Trust as Trustee for PNPMS Trust 1 ("Wilmington") and Statebridge Company, LLC ("Statebridge") to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons set forth below, the motion of Wilmington and Statebridge is **GRANTED** and the complaint is dismissed without prejudice to amendment.

**I.   BACKGROUND**

 **A. Allegations in the Complaint**

Plaintiffs Luis Ponce and Luisa Ponce are the owners of certain real property currently subject to a foreclosure action in state court. (Compl. p. 3);

---

[1]   Certain citations to the record are abbreviated as follows:

DE = docket entry

Compl. = Complaint (DE 1)

Mot. = Wilmington and Statebridge's Motion to Dismiss (DE 10)

Op. Br. = The Ponces' Opposition to the Motion to Dismiss (DE 14)

Reply Br. = Wilmington and Statebridge's Reply Brief (DE 16)

*see Wilmington Savings Fund v. Ponce*, N.J. Super. Ct. Ch. Div. Docket No. F-8534-20. When the Ponces purchased the subject property, they financed part of the purchase price via a mortgage loan from WMC Mortgage Corporation ("WMC"). (Compl. ¶ 1.) WMC also required the Ponces to execute a second mortgage with Mortgage Electronic Registration Systems, Inc. ("MERS, Inc."). (*Id.* ¶ 4.) In 2008, the Ponces stopped making payments on their second mortgage with MERS, Inc.; however, MERS, Inc. did not send a notice of action and stopped sending billing statements. (*Id.* ¶¶ 5–6.) Accordingly, the Ponces believed that their second mortgage had been written off. (*Id.*)

In August 2020, MERS, Inc. transferred the Ponces' second mortgage to "Defendants,"[2] but did not provide them with a notice of reassignment. (*Id.* ¶ 7.) Then, on October 2, 2020, "Defendants" filed a foreclosure action without previously providing the Ponces with a notice of intent to foreclose. (*Id.* ¶ 7–8.) On June 8, 2022, the Ponces sent "Defendants" a Notice of Error and Request for Information, which they failed to respond to. (*Id.* ¶ 9.) The complaint contains scattered references to various statutes and potential causes of action, but it contains just one count, alleging violations of unspecified state laws prohibiting unfair and deceptive consumer practices. (*Id.* p. 7.)

### B. State Court Proceeding and Procedural History

On October 2, 2020, Wilmington filed the related foreclosure complaint in the Superior Court of New Jersey, Chancery Division, Passaic County (Docket No. F-8534-20).[3] The Ponces made a motion to dismiss the foreclosure

---

[2]     The complaint refers to "Defendants" throughout without specifying which defendant, Wilmington or Statebridge, engaged in the alleged conduct. This issue is discussed in more detail below. *See* Section III.E.

[3]     I consider the complaint and other filings in the state court action not for the truth of the facts asserted therein, but to determine the nature and scope of the proceeding, and the rulings of the state court in the underlying action. *See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("[O]n a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.").

2

complaint, which the state court denied on August 19, 2021. Wilmington then moved for summary judgment, which the state court granted on May 3, 2022. On September 28, 2022, Wilmington filed for final judgment of foreclosure. However, on February 17, 2023, Wilmington withdrew its motion for final judgment. Based on that withdrawal, the state court denied the motion for final judgment on April 19, 2023. Thereafter, the Ponces filed a motion to vacate entry of default and reopen the case, which the state court granted on June 9, 2023. The state court permitted the Ponces to amend their answer to the foreclosure complaint to assert a counterclaim alleging that Wilmington violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692. The Ponces filed their amended answer on June 14, 2023.

On July 30, 2022, shortly after the state court granted Wilmington's motion for summary judgment in the foreclosure action, the Ponces filed their complaint in this court. (DE 1.) On September 23, 2022, Wilmington and Statebridge filed a motion to dismiss the federal complaint, which the Ponces opposed. (DE 10, 14, 16.) The motion to dismiss is fully briefed and ripe for decision.

## II.  LEGAL STANDARD

### A. Rule 12(b)(1)

"[B]ecause subject matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977). A necessary corollary is that the court can raise *sua sponte* subject-matter jurisdiction concerns." *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir. 2003).

Jurisdiction must be established as a threshold matter. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). A motion to dismiss pursuant to Rule 12(b)(1) may be brought as a facial or factual challenge. *See Church of the Universal Bhd. v. Farmington Twp. Supervisors*, 296 F. App'x 285, 287–88 (3d Cir. 2008). Where the motion challenges jurisdiction on the face of

the complaint, the court only considers the allegations of the complaint and documents referred to therein in the light most favorable to the plaintiff. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

By contrast, where the existence of subject matter jurisdiction is challenged factually, "no presumptive truthfulness attaches to the plaintiff's allegations," and the court may consider evidence outside the pleadings to satisfy itself of its power to hear the case. *Mortensen*, 549 F.2d at 891; *Gould Elecs., Inc.*, 220 F.3d at 176. Thus "Rule 12(b)(1) does not provide plaintiffs the procedural safeguards of Rule 12(b)(6), such as assuming the truth of the plaintiff's allegations." *CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008).

### B. Rule 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). On such a motion, the well-pleaded factual allegations of the complaint must be taken as true, with all reasonable inferences drawn in plaintiff's favor. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, demonstrating that it is "plausible on its face." *See Twombly*, 550 U.S. at 570; *see also Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). This entails "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

4

*Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* Stated differently, in reviewing the well-pleaded factual allegations and assuming their veracity, this Court must "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

### III. DISCUSSION

#### A. *Younger* Abstention

Wilmington and Statebridge seek dismissal based on the abstention doctrine of *Younger v. Harris*, 401 U.S. 37 (1971). I find that abstention under *Younger* is not warranted under the circumstances of this case.

*Younger* requires federal courts to abstain from interfering with certain pending state proceedings. *See Gonzalez v. Waterfront Comm'n of N.Y. Harbor*, 755 F.3d 176, 180 (3d Cir. 2014). It applies rarely, in "only 'three exceptional categories' of proceedings: (1) 'ongoing state criminal prosecutions,' (2) 'certain civil enforcement proceedings' and (3) 'pending civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Malhan v. Sec'y United States Dep't of State*, 938 F.3d 453, 462 (3d Cir. 2019) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78–79 (2013)).

Wilmington and Statebridge do not succeed in invoking any of those three categories. The foreclosure proceeding is neither a criminal prosecution, nor is it "a civil enforcement proceeding akin to a criminal prosecution in important respects." *Id.* (internal quotations omitted). Additionally, state foreclosure actions typically do not result in orders that are "uniquely in furtherance of the state courts' ability to perform their judicial functions." *See Carrier v. Bank of Am., N.A.*, 2014 WL 356219, at *9–*10 (D.N.J. Jan. 31, 2014), *aff'd* 592 F. App'x 135 (3d Cir. 2015) (declining to apply *Younger* despite existence of pending foreclosure action); *see also*, *Hernandez v. Fed. Nat. Mortg. Ass'n*, 2015 WL 3386126, at *2 (D.N.J. May 26, 2015) ("Since *Sprint*, courts

have declined to apply the *Younger* doctrine in the context of state foreclosure proceedings.").

Accordingly, the *Younger* abstention doctrine is inapplicable in this case.

### B. *Rooker-Feldman* Doctrine

Wilmington and Statebridge seek dismissal based on the abstention doctrine of *Rooker-Feldman*.[4] The *Rooker-Feldman* doctrine is founded on the principle that a federal district court does not sit to hear appeals from state-court judgments. *Malhan*, 938 F.3d at 458. The doctrine applies to bar "[1] cases brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments." *Id.* (citation omitted).

As the elements suggest, *Rooker-Feldman* applies only when there was a prior state-court judgment. *Id.* What qualifies? There are three essential scenarios: (1) "when the highest state court in which review is available has affirmed the judgment below," (2) "when the state action has reached a point where neither party seeks further action," and (3) when the "state proceeding has finally resolved all the federal questions in the litigation, even though state law or purely factual questions . . . remain." *Id.* at 459–60 (cleaned up). The foreclosure proceeding here does not fall into any of these scenarios.

On the first, the proceeding has not even reached an appellate court, let alone the New Jersey Supreme Court.

The second scenario applies (a) "when a lower state court issues a judgment and the losing party allows the time for appeal to expire" or (b) when a state court issues an interlocutory order and "the parties then voluntarily terminate the litigation." *Id.* at 459 (quotation marks and citation omitted). The state court has not issued an appealable final judgment or such an interlocutory order. In a New Jersey foreclosure action, an order granting

---

[4] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

summary judgment is not final and appealable. *Aliperio v. Bank of Am., N.A.*, No. 2:16-cv-01008, 2016 WL 7229114, at *7–*10 (D.N.J. Dec. 13, 2016); *Martinez v. Bank of Am., N.A.*, 664 F. App'x 250, 253 n.4 (3d Cir. 2016). Rather, the final judgment of foreclosure is the final decision. *Aliperio*, 2016 WL 7229114, at *8. Wilmington withdrew its motion for final judgment of foreclosure on February 17, 2023. *See Wilmington v. Ponce*, Docket No. F-8534-20, "Order to Withdraw Motion for Judgment submitted by Court" (Feb. 17, 2023) and "Denied Order For Final Judgment submitted by Court" (Apr. 19, 2023). The foreclosure action therefore remains ongoing. Plainly then, the second scenario does not apply.

The third scenario is also not met. In the foreclosure proceeding, about two weeks ago, the Ponces filed an answer to the complaint with a counterclaim alleging that Wilmington violated the FDCPA. *See id.* "Contested Answer" (June 14, 2023). Thus, not all federal questions have been resolved in the state court, so the third scenario does not apply.

Accordingly, there has been no state-court judgment for *Rooker-Feldman* purposes, so that doctrine does not deprive this court of jurisdiction.

### C. *Colorado River* Abstention

The federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them by Congress. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). There are, however, a few narrow "exceptional circumstances" in which federal courts may abstain from exercising jurisdiction in favor of parallel state proceedings. *Id.* at 813. *Colorado River* abstention applies "where the presence of concurrent state proceedings may indicate that a district court should abstain from the 'contemporaneous exercise of concurrent jurisdiction[]' due to principles of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 284 n. 10 (3d Cir. 2017) (quoting *Nat'l City Mortg. Co. v. Stephen*, 647 F.3d 78, 83–84 (3d Cir. 2011)). The Third Circuit has

7

set forth a six-factor framework for determining the appropriateness of *Colorado River* abstention:

> The initial question is whether there is a parallel state proceeding that raises "substantially identical claims [and] nearly identical allegations and issues." If the proceedings are parallel, courts then look to a multi-factor test to determine whether "extraordinary circumstances" meriting abstention are present. . . .
>
> In determining whether an action presents "extraordinary circumstances" we consider six factors: "(1) [in an *in rem* case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties." "No one factor is determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." The balancing of factors is "heavily weighted in favor of the exercise of jurisdiction."

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307–08 (3d Cir. 2009) (internal citations and footnote omitted).

Here, the state and federal matters are not parallel. "Generally, cases are parallel so as to justify abstention under *Colorado River* when they involve the same parties and claims." *Trent v. Dial Med. of Fla., Inc.*, 33 F.3d 217, 223 (3d Cir. 1994) *superseded by statute on other grounds as recognized in Nat'l City Mortg. Co.*, 647 F.3d at 83 and *Malhan*, 938 F.3d at 465 n.7. The claims need not be identical so long as they are "substantially identical," raising "nearly identical allegations and issues." *Timoney v. Upper Merion Twp.*, 66 F. App'x 403, 405 (3d Cir. 2003) (citing *Trent*, 33 F.3d at 223). Even assuming *arguendo* that the federal complaint asserts violations of the FDCPA,[5] the allegations underlying the FDCPA claim in the state foreclosure action are entirely different. The counterclaim in state court asserts that Wilmington violated the

---

5    As discussed *infra*, it does not do so with the requisite clarity.

8

FDCPA on September 28, 2022, when it filed a motion to enter final judgment of foreclosure containing inaccurate figures. *See Wilmington v. Ponce*, Docket No. F-8534-20, "Contested Answer" (June 14, 2023). The body of the federal complaint, though not any actual count asserted therein, states that "Defendants" took the following actions:

- failure to issue billing statements;
- failure to issue notices of action;
- leading Plaintiffs to believe that the mortgage had been written off or was otherwise dormant;
- transferring Plaintiffs' mortgage to a second servicer without notice to Plaintiffs;
- filing a foreclosure action against Plaintiffs after the loan lay dormant for 14 years; and
- failing to respond to a Notice of Error and Request for Information served upon them on June 8, 2022.

(Compl. ¶ 11.) There is no overlap in the allegations or issues. Additionally, Statebridge is not a party to the foreclosure action.

I will therefore deny the application to abstain under *Colorado River*.

### D. Claim and Issue Preclusion

Whether a state court judgment should have a preclusive effect in a subsequent federal action depends on the law of the state that adjudicated the original action. *See Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999) ("To determine the preclusive effect of [the plaintiff's] prior state action we must look to the law of the adjudicating state."); *see also Allen v. McCurry*, 449 U.S. 90, 96 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."). Here, that state is New Jersey.

#### 1. Entire Controversy Doctrine

Wilmington and Statebridge argue that the Ponces' claims are barred by New Jersey's entire controversy doctrine. Here, the same lack of finality that doomed *Rooker-Feldman* also subverts the entire controversy doctrine.

The entire controversy doctrine has been described as "New Jersey's specific, and idiosyncratic, application of traditional res judicata principles."

9

*Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). The doctrine precludes, not just claims actually decided by a prior judgment, but all claims that a party could and should have joined in a prior case based on the same transaction or occurrence. The doctrine "seeks to assure that all aspects of a legal dispute occur in a single lawsuit." *Olds v. Donnelly*, 696 A.2d 633, 637 (N.J. 1997). Its purposes are "(1) to encourage the comprehensive and conclusive determination of a legal controversy; (2) to achieve party fairness, including both parties before the court as well as prospective parties; and (3) to promote judicial economy and efficiency by avoiding fragmented, multiple and duplicative litigation." *Mystic Isle Dev. Corp. v. Perskie & Nehmad*, 662 A.2d 523, 529 (N.J. 1995).

The entire controversy doctrine generally bars a subsequent action only when the prior action at issue has been "tried to judgment or settled." *Kaselaan & D'Angelo Assocs., Inc. v. Soffian*, 290 N.J. Super. 293, 299 (App. Div. 1996). To that extent, it is parallel to traditional res judicata doctrines. *Rycoline Prod., Inc.*, 109 F.3d at 889 (noting "the close relation between the Entire Controversy Doctrine and traditional res judicata principles," and remarking that "[o]ne of the prerequisites to the application of res judicata in New Jersey, as elsewhere, is the existence of a prior judgment that is final, valid, and on the merits.") "[B]ecause the entire controversy doctrine is an equitable principle, its applicability is left to judicial discretion based on the particular circumstances inherent in a given case." *Mystic Isle Dev. Corp.*, 662 A.2d at 529–30.

The issue of finality again requires that the motion to dismiss on these grounds be denied. No final judgment has been entered in the foreclosure action. Accordingly, I decline to dismiss the complaint under the entire controversy doctrine.

### 2. Claim Preclusion

Wilmington and Statebridge argue that the closely related doctrine of claim preclusion bars the Ponces' suit. New Jersey recognizes claim preclusion

as a doctrine somewhat distinct from the entire controversy doctrine. *Wadeer v. N.J. Mfrs. Ins. Co.*, 110 A.3d 19, 27–28 (N.J. 2015). Like the entire controversy doctrine, claim preclusion requires (1) a final judgment on the merits in the prior action, (2) parties who are identical to or in privity with those in the prior action, and (3) "the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one." *McNeil v. Legis. Apportionment Comm'n*, 177 N.J. 364, 828 A.2d 840, 859 (N.J. 2003) (citation omitted). "Claim preclusion applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined." *Id.* (citation omitted).

For the same reasons given above, there is no final judgment on the claims in the foreclosure action. To the extent the motion to dismiss is based on claim preclusion, it will be denied.

### 3. Issue Preclusion

Wilmington and Statebridge argue that issue preclusion bars this suit. Issue preclusion bars relitigation of issues (as opposed to claims) if, in a prior suit, the issue was "(1) actually litigated; (2) previously determined; and (3) necessary to the previous judgment." *In re Energy Future Holdings Corp.*, 990 F.3d 728, 743 n.9 (3d Cir. 2021); *accord Adelman v. BSI Fin. Servs., Inc.*, 179 A.3d 431, 436 (N.J. Super. Ct. App. Div. 2018). Issue preclusion thus differs from claim preclusion in that it applies to matters actually decided, whereas "claim preclusion prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1595 (2020).

I will not apply issue preclusion. The FDCPA issue was only recently raised as a counterclaim in the foreclosure action and has not been decided. Thus, to the extent the motion to dismiss is based on issue preclusion, it will be denied.

### E. Rule 8

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, a complaint seeking to raise a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. P. 8(a)(2). Each allegation in a complaint must therefore be "concise and direct." Fed. R. Civ. P. 8(e)(1). A district Court may dismiss a complaint *sua sponte* for failure to comply with Rule 8. *Ruther v. State Kentucky Officers*, 556 F. App'x 91, 92 (3d Cir. 2014). A complaint may therefore be dismissed pursuant to Rule 8 where the "complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).

However, in dismissing a complaint pursuant to Rule 8, a reviewing court should provide the party whose pleading is dismissed an opportunity to amend. Therefore, the appropriate action is to dismiss the complaint without prejudice to the filing of an amended complaint. *Ruther*, 556 F. App'x at 92; *Moss v. United States*, 329 F. App'x 335, 336 (3d Cir. 2009).

The complaint contains a single count for "violations of state law prohibiting unfair and deceptive consumer practices." The complaint does not disclose which state law (or laws) Wilmington and Statebridge allegedly violated. Instead, the Ponces assert in their opposition brief that count one brings claims under the FDCPA and the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. It is axiomatic, however, that a motion to dismiss is directed to the face of the complaint, with irrelevant exceptions, and that a complaint cannot be amended by, *e.g.*, statements in a brief. *See Pennsylvania ex. Rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").

12

The complaint recites legal standards and definitions under the FDCPA and the FTC Act in the introduction and definition sections, and mentions some remedies available under those statutes in paragraph 14 of the factual allegations section. I will not infer that the Ponces are bringing a cause of action under the FDCPA and the FTC Act based on bare references to the language of those statutes. Particularly when, as here, the complaint asserts one count for violation of undisclosed state law and, in a conclusory fashion, states that "Defendants" violated the "consumer protection laws of the State" and caused "harm to the State." (Compl. ¶¶ 16, 18.)

The confusion the complaint has caused is evident from the parties' briefing. Wilmington and Statebridge describe the Ponces' complaint as "not clear regarding which laws they are proceeding under in this case." (Def. Mot. p. 1.) Wilmington and Statebridge considered that the Ponces could be asserting claims under the "FDCPA and/or the FTC Act," and focused their motion to dismiss on whether the Ponces stated a claim under the FDCPA. (*Id.*) However, in opposition, the Ponces explain that they intended to bring claims under both the FDCPA and the FTC Act. The Ponces stress that Wilmington and Statebridge failed to move to dismiss the FTC Act claim; therefore, their complaint should not be dismissed in its entirety. (Pl. Op. pp. 4–5.) In reply, Wilmington and Statebridge moved to dismiss the FTC Act claim for the first time, which ordinarily would not be allowed. *See Gap Props., LLC v. Cairo*, No. 19-cv-20117, 2020 WL 7183509, at *8 (D.N.J. Sept. 17, 2020).

Additionally, the complaint fails to satisfy Rule 8 "because it does not place Defendants on notice of the claims against each of them." *Sheeran v. Blyth Shipholding S.A.*, 2015 WL 9048979, at *3 (D.N.J. Dec. 16, 2015) (citing *Ingris v. Borough of Caldwell*, 2015 WL 3613499, at *5 (D.N.J. June 9, 2015) ("[T]o the extent Plaintiff seeks to lump several defendants together without setting forth what each particular defendant is alleged to have done, he has engaged in impermissibly vague group pleading."). The complaint states that "Defendants" took certain actions without specifying what act each defendant

13

is alleged to have done. Adding to the confusion is that some references to "Defendants" seem to include actions taken by MERS, Inc., who is mentioned in the complaint but is not a party to this action.[6] "Alleging that 'Defendants' undertook certain illegal acts—without more—injects an inherently speculative nature into the pleadings, forcing both the Defendants and the Court to guess who did what to whom when. Such speculation is anathema to contemporary pleading standards." *Japhet v. Francis E. Parker Mem'l Home, Inc.*, 2014 WL 3809173, at *2 (D.N.J. July 31, 2014).

It is clear from the face of the complaint and the parties' briefing that the complaint does not comply with Rule 8. Thus, I will dismiss the complaint, without prejudice to refiling within 30 days. **In their amended complaint, the Ponces must allege the claims they are bringing in separate numbered counts, state the laws under which their claims arise, plead sufficient facts for each claim to show that they are entitled to relief, rectify the group pleading issue, and otherwise comply with Rule 8.**

### F. FTC Act Private Cause of Action

To the extent the complaint can be construed as alleging an FTC Act claim, I observe that there is no private right of action to enforce the FTC Act.

---

[6] For example, in support of count one, the complaint states that "Defendants transferred Plaintiffs' mortgage to a second servicer without notice to Plaintiffs." (Compl. ¶ 20.) This must refer to MERS, Inc., who transferred the Ponces' second mortgage to Wilmington in August 2020. (Compl. ¶ 7.) Additionally, another allegation in support of count one states that "Defendants failed to issue any billing statements or notice of action to the Plaintiffs with regard to the second mortgage on the property leading Plaintiffs to believe that the loan had been written off." (Compl. ¶ 19.) Again, this appears to reference MERS, Inc., based on the Ponces' allegation that they "never received any notices of action against them and stopped receiving billing statements from MERS, Inc. altogether. Accordingly, Plaintiffs were under the reasonable belief that their second mortgage had been written off." (Compl. ¶ 6.)

I also note that, because all of MERS, Inc.'s actions occurred between 2008 and 2020, it is highly likely that a claim based on those actions would be barred by the FDCPA's one-year statute of limitations. *See* (Compl. ¶¶ 5–7); *Glover v. F.D.I.C.*, 698 F.3d 139, 148 (3d Cir. 2012) ("A claim under the FDCPA 'may be brought . . . within one year from the date on which the violation occurs.'" (quoting 15 U.S.C. § 1692k(d))).

14

*See, e.g., Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 231 (3d Cir. 1990) (noting that neither the FDA's nor the FTC's "constituent statutes create[] an express or implied private right of action."); *Mo v. JPMorgan Chase Bank, N.A.*, No. 20-cv-14387, 2021 WL 1608895, at *5 (D.N.J. Apr. 26, 2021) ("[T]here is no private right of action to enforce the FTCA.").

Therefore, any claim for violation of the FTC Act, to the extent such claim may have been intended, is dismissed.

### IV. CONCLUSION

For the reasons set forth above, Wilmington and Statebridge's motion to dismiss is **GRANTED**. The complaint is dismissed, without prejudice to the filing of a proposed amended complaint within 30 days. If no proposed amended complaint is filed, this dismissal shall ripen into a dismissal with prejudice.

A separate order will issue.

Dated: June 26, 2023

/s/ Kevin McNulty
_____
**Hon. Kevin McNulty**
**United States District Judge**